SCOTT T. CLAYTON, AN INFANT BY HIS GUARDIAN AD LITEM, CURTIS CLAYTON, AND CURTIS CLAYTON, INDIVIDUALLY, PLAINTIFFS-APPELLANTS, v. FREEHOLD TOWNSHIP BOARD OF EDUCATION, WILLIAM McCROWHAN AND CLAUDIO LOPEZ, AN INFANT BY HIS GUARDIAN AD LITEM, J. R. LOPEZ, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 16, 1974—Decided September 27, 1974.

Before Judges COLLESTER, LORA and HANDLER.

*Mr. Michael D. Schottland* argued the cause for appellants (*Messrs. Chamlin, Schottland and Rosen,* attorneys; *Mr. Thomas W. Cavanagh, Jr.* on the brief).

*Mr. Bernard F. Boglioli* argued the cause for respondents, Freehold Township Board of Education and William Mc-Crowhan.

*Mr. Richard A. Amdur* argued the cause for respondents Lopez (*Messrs. Hanlon, Amdur and Hanlon,* attorneys).

The opinion of the court was delivered by

LORA, J. A. D. Plaintiffs sued the Freehold Township Board of Education, William McCrowhan, a gym teacher, and Claudio Lopez, a fellow student of infant plaintiff Scott T. Clayton, to recover damages for injuries sustained when a baseball bat slipped out of Lopez' hands during a softball game and struck Clayton who was seated on a players' bench along the third base line.

They appeal from a judgment of no cause for action, entered following a jury verdict, and a denial of a motion for a new trial.

On appeal plaintiffs contend: (1) the trial judge erred in allowing defendant Lopez to testify that the schoolboy witnesses for plaintiffs were friends of young Clayton and had teased him; that such testimony was not admissible to show bias or interest on the part of plaintiffs' witnesses; (2) counsel's remarks in summation were improper; (3) the trial judge erred in not granting a new trial motion as to the defendant McCrowhan; (4) the trial judge should have directed a verdict against infant defendant Lopez, and (5) there was plain error in the charge because it inadequately

instructed the jury and had a tendency to confuse them as to material elements in the case, — the removal of contributory negligence, and the fundamental elements of negligence, particularly as to defendant McCrowhan.

Scott Clayton, a seventh-grader at a Freehold grammar school, testified he was in a gym class softball game being supervised by defendant McCrowhan and was seated on the players' bench along the third base line when defendant Claudio Lopez came to bat. Lopez swung at a pitched ball and the next thing Scott knew he felt something go down his throat and his mouth was full of blood.

The plaintiff further testified that earlier in the game he saw Lopez, while batting, let go the bat which then skimmed across the ground, bounced, and struck a player, Andrew Blumetti, on the foot. He stated that after this first incident in which Blumetti was struck by the bat, the gym teacher, McCrowhan, gave no instructions to any of the students to move from the bench.

Andrew Blumetti testified that while standing next to the bench he observed the bat leaving Lopez' hands as he was swinging; that it bounced off the ground and struck him in the lower calf. He estimated the bench as being 10 to 20 feet from home plate. The witness then described how when Lopez next came to bat, the bat again left his hands and struck plaintiff. He further stated that in games played earlier that month Lopez had let go of the bat when he swung — "he wouldn't drop it, just let it fly"; that because of this the catcher "as a joke" and "for protection" would retreat behind the backstop whenever Lopez came to bat. He stated this was not done when other players came to bat.

Martin Moore, another member of the gym class, testified that Lopez when at bat usually would throw the bat; that on a prior occasion the teacher, defendant McCrowhan, showed Lopez how to hold the bat and how to finish with his swing. The witness observed the initial incident of that day in which Blumetti was hit. Moore also testified that when defendant was at bat the catcher went behind the back-

stop. He stated that when Clayton was injured the bat went out of Lopez' hands as he finished off his swing, went past him and another man, and struck Clayton without hitting the ground.

Kenneth Orenstein, another player, testified that defendant had a tendency to let go of the bat when he swung and the bat would either "go back to the cage or over to the third base side, maybe not as far as the bench but pretty close." He also testified that he caught once while defendant was at bat and went behind the cage for protection.

Defendant McCrowhan testified that Lopez swung at the ball, which he believed Lopez hit, and that as he swung he let go of the bat which went through the air and hit young Clayton. The bat in question was a regulation softball bat with tape on the handle. He did not remember Lopez throwing the bat prior to this, but he did say Lopez might have; that during the course of a game bats are sometimes thrown.

On cross-examination McCrowhan repeated that he did not remember Lopez having thrown the bat prior to the incident in question. He also stated that he would not single Lopez out as someone who threw the bat more than anyone else or as one for whom the catchers would go to the side of the screen and slightly behind it; he did not recall having cautioned Lopez about throwing the bat, though he stated he might have, "just like anyone else in the class"; he had no recollection of Blumetti being hit by a thrown bat on that day. He estimated that the bench was about 30 feet from home plate.

In response to plaintiff's inquiry McCrowhan stated that based on his experience as a gym teacher (seven years at the time of the accident), if any boy threw the bat he would instruct him on how to hold on to it and carry it a couple of steps down the first base line before dropping it. Upon inquiry by the trial judge he stated that by "thrown" he meant that when some boys finish their swing they have a tendency to release the bat at the end of their swing; the hands slip off the bat as they finish their swing. He did remember

boys going behind the cage when catching, but not necessarily when defendant was at bat; that the boys were "kind of leery," when catching, of getting hit by a bat or ball and would stand to the side rather than directly behind the batter.

Defendant Claudio Lopez described the incident in question as follows: "I went up to bat, I swung and the bat slipped out of my hands * * * I didn't see it. I was running toward first." He stated that he did not throw the bat, that it slipped, that he had never thrown the bat prior to that day, and was never cautioned by the gym teacher about throwing the bat. He testified that he did not, earlier in the game, throw a bat which struck Blumetti.

Lopez further testified that boys did not go behind the batting cage when he got up to bat, but merely went to the side, and they did so when other boys got up to bat because they didn't want to be hit with the ball. He did state that defendant McCrowhan had, prior to that day, instructed him on how to bat, telling him to "hold the bat right hand over left, and after completing the swing to stop, put down the bat and then run."

Over timely objection Lopez testified that young Clayton and the three boys who testified in his behalf were friends, were not friends of his and that they sometimes teased him.

Plaintiffs first contend the trial judge erred in permitting defendant Lopez to seek to prove bias and interest on the part of plaintiffs' schoolboy witnesses in that (1) a proper foundation for such evidence was not established during the cross-examination of young Clayton and said witnesses, and (2) the trial judge should have exercised his discretion under *Evid. R.* 4 and barred the testimony.

The text writers indicate some states require a foundation be laid when introducing evidence of bias of any sort, others do not, and still others require a foundation for statements or utterances, but not for acts or circumstances. See *McCormick, Evidence* (2 ed. 1972), § 40 at 80; 3A *Wigmore,*

*Evidence,* § 953 at 801–802 (1970) ; Annotation 87 *A. L. R.* 2d 407 (1963).

In *Roth-Schlenger, Inc. v. Schlenger,* 121 *N. J. Eq.* 536 (Ch. 1937), the court, though by dictum, did clearly indicate that there was no need for a foundation for evidence of circumstances showing bias, stating:

If the indications of bias are acts or circumstances — such as an assault or employment — no foundation need be laid for the proof, but if bias appears from statements of the witness, then according to the rule in most jurisdictions, the witness must first be asked if he made such statements before independent proof thereof is admissible. [at 537; citation omitted]

*Evid. R.* 20, "Evidence Generally Affecting Credibility," does not posit the laying of a foundation as a precondition to the receipt of extrinsic evidence affecting credibility. This is to be contrasted to impeachment through the demonstration of a conflict between a testimonial statement of a witness and a prior statement made by him.

In such situations *Evid. R.* 22(a) provides that if the trial judge deems it feasible, a certain amount of identification regarding a prior written statement may have to be given to the witness before he may be examined about it, and *Evid. R.* 22(b), which by its terms applies to both oral and written prior inconsistent statements, provides that extrinsic evidence of prior contradictory statements by a witness may, in the trial judge's discretion, be excluded unless the witness, while testifying, was given an opportunity to identify, explain or deny them. *Commentary on the New Jersey Rules of Evidence,* at 95 (1972 ed.).

*Evid. R.* 22 is, then, a departure from the holdings of our previous cases which required a foundation before such evidence was admissible. See *e. g. Schneider v. Preis,* 79 *N. J. Super.* 400 (App. Div. 1963). The rule gives the trial judge discretion to exclude the evidence if a foundation is not laid. *State v. Conyers,* 58 *N. J.* 123, 132 (1971).

Since *Evid. R.* 22(b) has, in the court's discretion, removed the requirement of a foundation when offering ex-

trinsic evidence of prior inconsistent statements, we are of the opinion that a foundation through prior cross-examination is not required where impeachment does not consist of the contrasting of contradictory statements but rather of acts or circumstances showing bias.

██ ██ We see no abuse of the trial judge's discretion in admitting the testimony complained of without a foundation nor do we agree with plaintiffs' contention the testimony should have been excluded on the basis of *Evid. R. 4.*

██ Plaintiffs next contend that certain comments made by defense counsel in summation indicated the infant defendant stood alone and was uninsured and that such remarks were error justifying a new trial. The comment complained of was as follows:

> As I started to say, I represent a thirteen year old boy. His father has nothing to do with this law suit other than the fact that he's named as the guardian, just as Mr. Clayton is guardian of ————.

A reading of the remarks in context discloses no such insinuation nor do we believe the jury could strain to such extent as to extract an inference therefrom that infant defendant was not insured. Counsel was merely pointing-up to the jury that Lopez' conduct was to be weighed in the light of the standard of care applicable to a 13-year-old boy in like circumstances. Moreover, the trial judge properly instructed the jury as to the status of infant defendant and his father in the suit. *Cf. Wild v. Roman*, 91 *N. J. Super.* 410, 419 (App. Div. 1966).

We have reviewed the record in its entirety and find no error in the trial judge's denial of plaintiffs' motion for a new trial against defendant McCrowhan and in his not directing a verdict against defendants Lopez. The case clearly presented questions of fact for determination by the jury and the jury's verdict in favor of all defendants reflects, not the misapplication of the correct principles of law, but rather its assessment of the weight of the evidence and credibility of the witnesses.

In ruling out contributory negligence as a defense, the trial judge advised the jury of his decision and told them "Anything you heard from any other judge about contributory negligence does not apply to this case and therefore I have not charged it to you because I have ruled outside your presence that contributory negligence of the infant plaintiff is not a defense available to the defendants in this case."

Plaintiffs now argue the trial judge should have clearly defined contributory negligence as it pertained to this case. Under the evidence and circumstances of the trial, we are satisfied the jury could not have been misled and error, if any, did not have a clear capacity to bring about an unjust result. *April v. Collings Lakes Ambulance Ass'n,* 109 *N. J. Super.* 392 (App. Div. 1970), is distinguished.

It is also asserted by plaintiffs that the trial judge did not adequately charge the fundamental elements of negligence, particularly as to defendant McCrowhan; that he did not adequately define nor structure the duty to exercise reasonable supervisory care for the safety of students imposed on a teacher such as McCrowhan, illustrated by *Titus v. Lindberg,* 49 *N. J.* 66, 73 (1967); *Jackson v. Hankinson,* 51 *N. J.* 230, 235–236 (1960), and *Caltavuturo v. Passaic,* 124 *N. J. Super.* 361, 366 (App. Div. 1973).

Reading the charge as a whole, we find that the applicable law was correctly and adequately imparted to the jury and that "no prejudice resulted from any lack of artistry or specificity in the language used by the trial court." *Titus v. Lindberg, supra,* 49 *N. J.* at p. 77.

Affirmed.